In re Jack O. LOADER, Debtor.

Lori Wood, Plaintiff,

v.

Jack O. Loader, Defendant.

Bankruptcy No. 08–00387–JDP.

Adversary No. 09–6004.

United States Bankruptcy Court, D. Idaho.

Dec. 10, 2009.

Jon M. Steele, Runft & Steele, Boise, ID, for Plaintiff.

D. Blair Clark, Law Offices of D. Blair Clark, Boise, ID, for Defendant.

## MEMORANDUM OF DECISION

JIM D. PAPPAS, Bankruptcy Judge.

### Background

In a September 28, 2009 Memorandum of Decision, the Court decided that Plaintiff Lori Wood's claim against Defendant Jack Loader was not excepted from discharge in Defendant's bankruptcy case. Docket No. 24. On October 8, 2009, Plaintiff filed a "Motion to Reconsider the Court's Findings, or in the Alternative, Motion for a New Trial." Docket No. 26. In support of the motion, Plaintiff submitted a memorandum and a statement which outlined specific references to the record supporting Plaintiff's position. *Id.* Defendant objected to the motion. Docket No. 28.

The Court conducted a hearing on the motion on December 1, 2009, at which counsel for the parties presented arguments. At the conclusion of the hearing, the Court took the motion under advisement. Having now considered the record, the arguments of the parties, and the applicable law, the Court issues the following Memorandum, which disposes of the motion. Fed. R. Bankr.P. 7052, 9014.[1]

### Discussion

#### I.

■ The Rules do not contemplate a "motion to reconsider." *In re Pich*, 00.2 I.B.C.R. 62, 63 (Bankr.D.Idaho 2000). As this Court has observed:

A "motion to reconsider" is not among the motions recognized by the Federal Rules of Civil Procedure.... The federal courts have consistently stated that a motion so denominated which challenges the prior judgment on the merits will be treated as either a motion "to alter or amend" under Rule 59(e) or a motion for "relief from judgment" under Rule 60(b).... These two rules are distinct; they serve different purposes and produce different consequences. Which rule applies depends essentially on the time a motion is served. If a motion is served within ten days of the rendition of judgment, the motion ordinarily will fall under Rule 59(e). If the motion is served after that time, it falls under Rule 60(b).

*In re Moore*, 01.4 I.B.C.R. 134, 134 (Bankr.D.Idaho 2001) (quoting *Jimenez v. Rodriguez (In re Rodriguez)*, 233 B.R. 212, 218–19 (Bankr.D.Puerto Rico 1999)). Defendant's "motion to reconsider" was served within ten days after the judgment in this action, Docket No. 25, was entered. Because the motion seeks a new trial, albeit in the alternative, the Court concludes

---

1. Unless otherwise indicated, all statutory references are to the Bankruptcy Code, 11 U.S.C. §§ 101 –1532. All rule references are to the Federal Rules of Bankruptcy Procedure, Rules 1001–9037.

that the standards applicable to Rule 59 motions apply here.[2]

■ "The movant's burden under Rule 59(a) and (e) is to clearly establish a manifest error of fact or of law, or to present newly discovered evidence." *In re Moore*, 01.4 I.B.C.R. at 135 (citing *School Dist. No. 1J, Multnomah County, Oregon v. ACandS, Inc.*, 5 F.3d 1255,1263 (9th Cir.1993)). The motion cannot be used to reargue contentions which were already presented:

> A motion for reconsideration should not be used to ask the court "to rethink what the court had already thought through-rightly or wrongly." *Above the Belt, Inc. v. Mel Bohannan Roofing, Inc.*, 99 F.R.D. 99, 101 (E.D. Virginia 1983); *see Refrigeration Sales Co. v. Mitchell–Jackson, Inc.*, 605 F.Supp. 6, 7 (N.D.Ill.1983). Arguments that the court was in error on the issues it considered should be directed to the court of appeals. *See Refrigeration Sales Co.*, 605 F.Supp. at 7.

*In re Moore*, 01.4 I.B.C.R. at 135 (quoting *In re America West Airlines, Inc.*, 240 B.R. 34, 38 (Bankr.D.Ariz.1999)).

Plaintiff does not offer any newly discovered evidence. Rather, Plaintiff contends the Court's finding that Defendant Loader was not intoxicated at the time of the subject accident is factually incorrect and against the clear weight of the evidence. Plaintiff argues that the Court failed to take into account the testimony of independent witnesses who corroborated that Loader was intoxicated. *Id.* In her memorandum in support of the motion, Plaintiff cites to the record which, she argues, proves that Defendant was intoxicated on the afternoon in question. In other words,

Plaintiff argues that the Court committed a manifest error in its factual findings in its Decision.

■ Before reviewing Plaintiff's individual assignments of error, however, it is important to once again highlight the standard for establishing intoxication under Idaho law, as previously explained in the Court's Decision at pp. 23–24. Plaintiff may prove intoxication under Idaho Code § 18–8004 in either of two ways. The first option is through forensic evidence that Defendant's blood alcohol concentration exceeded the statutory percentage. *Idaho v. Andrus*, 118 Idaho 711, 800 P.2d 107, 109 (Idaho Ct.App.1990). Here, because no chemical testing was performed, that option was not available to Plaintiff. Alternatively, Plaintiff may show, through either direct or circumstantial evidence, the impairment of ability to drive due to the influence of alcohol. *Id.* Under this method, Plaintiff must show both evidence of consumption of alcohol *and* "some discernable impairment related to the motorist's ability to drive." *Idaho v. Bronnenberg*, 856 P.2d 104, 107 (Idaho Ct.App. 1993); *Andrus*, 800 P.2d at 110–111 (holding that impairment must be "noticeable" or "perceptible," proven "by observations of some type of ascertainable conduct or effect," and relate to the ability to drive).

## II.

■ Plaintiff's memorandum in support of her motion offers the following points to show that Defendant was unlawfully intoxicated.

### A. Loader admitted drinking on the afternoon of July 24, 2004.

Plaintiff's contention regarding this point is absolutely correct. Indeed, the

**2.** Federal Rule of Civil Procedure 59 was recently amended to extend the time limits for filing a motion for a new trial and to alter or amend factual findings. Those changes became effective on December 1, 2009. However, the amendments do not impact the standards for reviewing such motions as set forth in this decision.

Court acknowledged this admission multiple times in its memorandum. *See* Decision at pp. 3, 5, 9, and 24. This admission, together with other evidence that Defendant was drinking that day, clearly satisfied the first prong of the statutory test—that Defendant had consumed alcohol. The admission, however, does not satisfy the second prong of the test, relating to noticeable or perceptible impairment of the ability to drive.

**B. Ojeda testified in his deposition that Defendant had been drinking and that is why Defendant asked Ojeda to drive.**

This is also correct and was considered by the Court. *See* Decision at pp. 3, 25. But, again, this evidence only satisfies the first prong of the test. It shows consumption of alcohol, but not necessarily that Defendant's ability to drive a motor vehicle was impaired.

**C. The deposition testimony of Carlos Martinez established that Defendant was loud, obnoxious, cowboy drunk, and pretty well intoxicated.**

The Court carefully read and considered each of the depositions which were admitted into the record, including the portions highlighted by Plaintiff. Many of the references identified by Plaintiff were specifically mentioned in the Courts ruling. *See* Decision at p. 25. However, the Court was not persuaded that the witness testimony describing Defendant as loud and obnoxious necessarily meant that he was intoxicated under the state law standard. After observing Loader at trial, and based upon the other evidence, the Court was not at all convinced that Defendant didn't exhibit such actions and engage is such behavior even when he had not been drinking. The labels "cowboy drunk" and a "loud drunk"

do not have a talismanic effect under the state standard. While these labels have some bearing on the consumption prong of the test, they provide inadequate evidence of a physical impairment related to the operation of a vehicle.

**D. The deposition testimony of Anna Martinez that "No one in their right mind would do such a thing."**

The Court also considered this testimony, though it is not specifically mentioned in its Decision. While this statement may provide some evidence of Defendant's alcoholic consumption, and perhaps shows Loader was guilty of bad judgment, it sheds little light on Defendant's physical condition at the time of the accident. Not all who exercise poor judgment or participate in even outrageous conduct are legally intoxicated. *See* Decision at p. 26.

**E. References in the deposition testimony of Madelena Gallegos that Defendant held a beer in his hand, that he was noisy, loud, and obnoxious, and that his behavior indicated he was intoxicated.**

Plaintiff cites eleven instances in the deposition testimony of Madelena Gallegos where the subject of Defendant's consumption of beer or intoxication was mentioned. As with the other depositions, the Court carefully considered these statements as well. *See* Decision at p. 25. Ms. Gallegos' statements, like the others, clearly show that Defendant consumed alcohol on the afternoon in question. However, like the other witnesses, her statements fall short of providing the evidence necessary under the state law standard. Her description of Defendant being loud and obnoxious, though relevant, is not dispositive. Likewise, her statements that Defendant's behavior indicated he was intoxicated, were

insufficient to persuade the Court that the standard had been met. Other than explaining that this behavior included loud, noisy, and obnoxious conduct, Ms. Gallegos failed to elaborate upon Defendant's physical condition. Ms. Gallegos offered no comment on Defendant's motor skills, such as his ability to perform tasks like walking without stumbling, climbing into the truck, focusing on multiple tasks simultaneously, responding to stimuli in a reasonably quick fashion, or other tasks which may be related to the operation of a vehicle. The absence of this type of evidence in the record in this context is a problem for Plaintiff.

### F. Judge Sticklen's conclusions regarding opinion testimony by lay witnesses.

Plaintiff's final point cites Judge Sticklen's comment that "most people have some common knowledge about intoxication and its effects...." Ex. 4.[3] Plaintiff observes that each of the witnesses had ample opportunity to observe Defendant and that the factual basis for their opinions concerning Defendant's intoxication are clearly set forth in their testimony.

The Court does not disagree with this point. However, it appears that, without exception, each of these opinions regarding Defendant's intoxication were based upon the witnesses' observations of him consuming alcohol, and thereafter exhibiting loud, obnoxious, and rowdy behavior. Plaintiff has pointed to no references in the record that demonstrate that Defendant was impaired in a fashion that related to his ability to drive, as Idaho Code § 18–8004 and the case law require. The Court has combed through the record multiple times

and has found no such references. Without such evidence, the Court was not, and is not, persuaded that the statutory standard for intoxication was satisfied.

### III.

Plaintiff also argues that the Court "relies upon *Huntley v. Vessey* [*(In re Vessey)*, 03.4 I.B.C.R. 227 (Bankr.D.Idaho 2003)] in finding that the evidence failed to establish that Loader's ability to drive was impaired." Docket No. 26. Plaintiff explains that in Judge Myers' decision in *Huntley* "there was no testimony that Vessey (the driver) had a discernable impairment of his ability to drive immediately prior to the accident." *Id.* Plaintiff points out that in this case, in contrast to *Huntley*, she has provided overwhelming evidence that Defendant was "intoxicated and that he was loud, obnoxious and noisy." *Id.* Read liberally, the Court assumes Plaintiff argues that, given the facts, in citing to *Huntley*, the Court committed a manifest error of law.

This argument misinterprets the Court's reliance on *Huntley*, and simply misses the critical point. While there was quantitatively more evidence offered at trial in this action regarding Defendant's alcohol consumption and behavior than there apparently was in *Huntley*, as in that case, this Court was not persuaded that the evidence showed, more probably than not, that Defendant's ability to drive was impaired as required by the statutory standard. *Huntley* was cited by the Court merely to note that the law requires that the defendant engage in more than a negligent, even reckless lack of judgment, to warrant an exception to discharge. See Decision at p. 26.

---

3. At trial, Plaintiff's exhibits were marked as exhibits 1–25. However, in the statement in support of the motion, Plaintiff's counsel made repeated references to exhibits in the 100–124 range. This error is harmless, as it is clear that the documents to which he referred are the same documents that were admitted into the Court's trial record.

## Conclusion

After yet again considering all of the evidence and testimony in the record, the Court remains unpersuaded that Plaintiff met her burden of proof under § 523(a)(9). Defendant consumed alcohol on the afternoon of the accident and, frankly, acted like a jerk. But, that proof addresses only half of the statutory equation. The Court observed that its decision in this case required a close call, but even so, it still can not find on this record that Defendant was discernibly impaired in his ability to drive.

Plaintiff's motion for reconsideration, or in the alternative, for a new trial, will be denied. A separate order will be entered.[4]

---

4. Again, to prevail under § 523(a)(9), Plaintiff must also show that Defendant, who was a passenger in the vehicle, engaged in the "operation of a motor vehicle...." Because Plaintiff did not prove Defendant was unlawfully intoxicated, the Court makes no finding concerning this other critical element of Plaintiff's claim.